UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LOUISIANA CRISIS ASSISTANCE                    CIVIL ACTION
CENTER d/b/a LOUISIANA CAPITAL
ASSISTANCE CENTER

VERSUS                                         NO: 11-2102

ALEXANDRIA MARZANO-LESNEVICH                   SECTION: J(1)

### ORDER AND REASONS

Before the Court is **Defendant's Special Motion to Strike
(Rec. Doc. 4)**, **Plaintiff's Opposition (Rec. Doc. 15)**, and
**Defendant's Reply (Rec. Doc. 18).**  The motion is before the Court
on supporting memoranda, without oral argument.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

Alexandria Marzano-Lesnevich served as an unpaid summer law
clerk at the Louisiana Capital Assistance Center ("LCAC") while
she was a law student at Harvard University in 2003.  LCAC is a
nonprofit organization providing legal representation to indigent
capital defendants.  As a summer law clerk, she investigated the
facts of assigned cases, conducted case analysis, drafted
memoranda, managed client correspondence, and attended meetings
where attorneys discussed case strategies for specific clients.

After graduating from law school, Ms. Marzano-Lesnevich
pursued a career as a journalist and writer in lieu of a legal

1

career.  Nonetheless, her legal training has informed her writing, as she has published several essays relating to her experiences and dealing with the death penalty and sex crimes. Among her published works is an essay titled *In the Fade*, which was published in the Spring 2010 issue of a journal called *The Bellingham Review*,[1] and an essay entitled *Longtermer's Day*, which was published in a nonfiction periodical entitled *Fourth Genre* in 2010.[2]  Ms. Marzano-Lesnevich also published copies of these works, along with several other fictional works, on her personal website.[3]  *In the Fade* is a creative nonfictional description of the criminal prosecution of an LCAC client named Ricky Langley for the sexual assault and murder of a six-year old boy in Calcasieu Parish, Louisiana.  *Longtermer's Day* is a stylistically similar account of the author's experience visiting Angola Prison and conversing with prisoners.  It is these works, along with a forthcoming but yet uncompleted novel, which are at issue in this suit.

The director of LCAC, Richard Bourke, first discovered the existence of these works in 2001.  Believing that they contained

---

[1] *See* Alexandria Marzano-Lesnevich, *In the Fade*, Bᴇʟʟɪɴɢʜᴀᴍ Rᴇᴠɪᴇᴡ, Issue 62 (2010).

[2] *See* Alexandria Marzano-Lesnevich, *Longtermer's Day*, Fᴏᴜʀᴛʜ Gᴇɴʀᴇ, Issue 12.1 (2010).

[3] *See* Alexandria Marzano-Lesnevich, http://www.alexandria-marzano-lesnevich.com/page1/page1.html/ (Last visited Oct. 26, 2011).

confidential client information, he directed his staff to contact Ms. Marzano-Lesnevich and request that she withdraw her works from publication, as well as to cease from disclosing any other confidential information relating to LCAC clients.  In the meantime, he also contacted the *Bellingham Review* to request removal of the essay *In the Fade* from its website.  It complied with this request in an effort to avoid litigation.  These efforts eventually led to a conference call with Ms. Marzano-Lesnevich and her retained counsel.  During the conference call, Ms. Marzano-Lesnevich informed LCAC that she did not believe that any of the information in her published essays was confidential. She also informed Mr. Bourke and LCAC that she was in the process of writing a novel relating to her experiences as a LCAC law clerk and planned to seek publication upon the work's completion.[4]

LCAC subsequently filed suit in Civil District Court for Orleans Parish, Louisiana on July 26, 2011, alleging breach of fiduciary duty and breach of contract, and seeking injunctive relief prohibiting Ms. Marzano-Lesnevich from future disclosure or dissemination of confidential or privileged information

---

[4]  Ms. Marzano-Lesnevich describes the book as a "literary work – part memoir based on her own experience as a victim of sexual abuse, and part literary journalism about the criminal prosecution of Ricky Langley for sexually assaulting and murdering a six-year old boy in Calcasieu Parish."  *See* Rec. Doc. 4-2, p. 1-2.  The work reportedly deals with essentially the same subject matter as her essay *In the Fade*.

obtained in the course of her summer clerkship, as well as other information relating to LCAC clients which disadvantages or prejudices those clients. Defendant removed the case to federal court on August 24, 2011 and filed the instant Special Motion to Strike the same day. Plaintiff filed its Opposition on September 9, 2011, and the Defendant filed a Reply four days later on September 13, 2011.

### PARTIES' ARGUMENTS

Defendant Marzano-Lesnevich seeks to dismiss Plaintiff's claims for injunctive relief pursuant to Louisiana Code of Civil Procedure article 971, Louisiana's "anti-SLAPP" statute. Article 971 involves a burden-shifting procedure under which a defendant must first make a prima facie showing that the action against her arises out of an exercise of First Amendment rights with regards to a public issue. This shifts the burden to the plaintiff to demonstrate a probability of success on the merits of his claim. The Defendant raises several arguments in support of her in support of her Special Motion to Strike. First, she argues that the publication of a literary work is an exercise of the right of free speech, and because her essays and forthcoming novel explore issues surrounding the death penalty and sexual abuse, two important social issues, she insists that she has made the required prima facie showing.

Next, she contends Plaintiff cannot and has not sustained

4

its burden of demonstrating a probability of success on the merits of its claim for several reasons.  First, she argues that the issuance of the prayed-for injunction would constitute an unconstitutional prior restraint in violation of the First Amendment.  She relies on several cases in which federal courts have denied similar requests for injunctive relief against publication of allegedly harmful material.  Next, she urges that she owes no fiduciary or contractual duties to the Plaintiff, as it has not established the existence of a contract or that the Rules of Professional Conduct apply to her as a non-lawyer.  She also adds that the disputed disclosures in this case are either publicly known information or her own personal opinions, neither of which she would be required to keep confidential.  Third, she argues that LCAC has failed to demonstrate irreparable harm, as required to obtain an injunction.  She urges that LCAC's claims that her writings "may" influence jurors, district attorneys, and LCAC clients are wholly speculative.  Finally, she argues that the injunction sought by LCAC does not comport with Rule 65(d) of the Federal Rules of Civil Procedure because it is facially overbroad.

In response, LCAC first argues that article 971 is inapplicable in federal court in the first instance because it "directly collides" with the Federal Rules of Civil Procedure. While acknowledging that the Fifth Circuit seems to have assumed

that it was, LCAC urges that it never directly held that article 971 was applicable in federal court.   Next, even if article 971 is applicable, LCAC argues that Defendant has not carried her initial burden of showing that the instant dispute arises from an act in furtherance of her First Amendment rights because there is no First Amendment right to disclose information in breach of a duty of confidentiality.

In any case, it argues that it has demonstrated a probability of success on the merits of its claim for injunctive relief.   LCAC contends that it has shown all necessary elements for claims for breach of fiduciary duty and breach of contract under Louisiana law through the Declarations of LCAC's officials that were attached to its opposition to the Defendant's motion. Additionally, it submits that injunctive relief is proper to prevent disclosure of confidential information.   LCAC also argues it has shown a continuing threat of irreparable harm because Defendant expresses an intention to continue to publish confidential information in the future.   Finally, to the extent that the injunction it seeks is overbroad, it argues that the Court may tailor the injunction to the specific violations proved.

## DISCUSSION

### A.  Louisiana Code of Civil Procedure Article 971

Article 971 was enacted in 1999 after the Legislature found

"a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." LA. CODE CIV. P. art. 971, Legislative Findings.  These lawsuits are commonly referred to as "strategic lawsuits against public participation, or more succinctly "SLAPPs."  In keeping with this nomenclature, legislative enactments designed to combat these lawsuits and to encourage public participation in matters of public significance have been dubbed "anti-SLAPP" or "SLAPP back" statutes.  Over twenty five states have enacted such anti-SLAPP statutes.  *Guam Greyhound, Inc. v. Brizill*, No. 07-021, 2008 WL 4206682, at *2 (Guam Terr. Sep. 11, 2008).

To achieve these goals, article 971 provides defendants targeted by SLAPP suits with "a procedural device to be used early in legal proceedings to screen meritless claims," called a special motion to strike.  *Lee v. Pennington*, 2002-0381, p. 4 (La. App. 4 Cir. 10/16/02), 830 So. 2d 1037, 1041.  Essentially, the statute operates as a two-part burden-shifting framework. When a special motion to strike is filed, the court is required to stay all discovery in the proceedings, and the defendant must make a prima facie showing that the claims asserted against her arise from an act in furtherance of the exercise of her right of petition or free speech under the Louisiana or United States

Constitution in connection with a public issue.[5]  *Carr v. Abel*,
10-CA-835, p. 9 (La. App. 5 Cir. 4/29/11), 64 So.3d 292, 297.
After the defendant makes this showing, the burden shifts to the
plaintiff to demonstrate a probability of success on the merits
of his claim.  *Id.*  If the plaintiff fails to demonstrate a
probability of success, his claims will be dismissed, and the
prevailing defendant will be entitled to recover attorney's fees
and costs.  LA. CODE CIV. P. art. 971(B).  If the plaintiff
successfully defeats the motion, however, he can recover his own
attorney's fees and costs, and the court's ruling denying the
motion is admissible as substantive evidence later in the
proceeding.  *Id.* at (A)(3).

---

[5] The statute provides a non-exhaustive list of acts which
are deemed to be acts "in furtherance of a person's right of
petition or free speech under the United States or Louisiana
Constitution in connection with a public issue:"

   (a) Any written or oral statement or writing made before a
   legislative, executive, or judicial proceeding, or any other
   official proceeding authorized by law.

   (b) Any written or oral statement or writing made in
   connection with an issue under consideration or review by a
   legislative, executive, or judicial body, or any other
   official body authorized by law.

   (c) Any written or oral statement or writing made in a place
   open to the public or a public forum in connection with an
   issue of public interest.

   (d) Any other conduct in furtherance of the exercise of the
   constitutional right of petition or the constitutional right
   of free speech in connection with a public issue or an issue
   of public interest.

### B.  The *Erie* Doctrine and Applicable Law

Federal courts sitting in diversity apply the substantive law of the state in which they sit, but apply federal law to all matters of procedure.  *Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir.1995) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).  LCAC contends that article 971 is procedural in nature and incompatible with the Federal Rules of Civil Procedure.  It submits that while the Fifth Circuit assumed that article 971 was applicable in federal court in *Henry v. Lake Charles American Press, LLC*, it never squarely addressed the issue in its holding.

When a party alleges a direct conflict between a state law and the Federal Rules, the court must first "determine whether, when fairly construed, the scope of [the Federal Rule] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of [the state] law." *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333 (5th Cir. 2011)(quoting *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987).  To determine whether a federal rule controls a particular issue, courts examine the plain language of the Rule.  If the state law "directly collides" with the Federal Rule, the Federal Rule will be applied in lieu of the competing state law so long as the Federal Rule complies with the Rules Enabling Act, 28 U.S.C.§ 2072.  *Id.*  Where there is no direct conflict between

the state and Federal Rule, the state statute will be applied only if failure to apply it will frustrate the "twin aims" of *Erie* by discriminating against forum state residents and promoting forum shopping. *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).

Courts confronted with the issue of whether state anti-SLAPP statutes "directly collide" with the Federal Rules of Civil Procedure have reached differing conclusions. Compare *Stuborn Ltd. Partnership v. Bernstein*, 245 F. Supp. 2d 312, 316 (D. Mass. 2003)(concluding that Massachusetts' anti-SLAPP statute directly conflicts with the Federal Rules 12 and 56); *South Middlesex Opportunity Council, Inc. v. Town of Framingham*, 2008 WL 4595369, at *11 (D. Mass. 2008)(agreeing with the holding in *Stuborn, Ltd*. that Massachusetts' anti-SLAPP statute directly conflicts with Federal Rules 12 and 56); *Satkar Hospitality Inc. v. Cook County Bd. of Review*, 2011 WL 2182106, *5 (N.D. Ill. 2011)(concluding that Illinois anti-SLAPP motion which allowed assertion of a defense in lieu of filing an answer directly conflicted with Federal Rule 12); *1524948 Alberta Ltd. v. Lee*, 2011 WL 2899385, at *3 (N.D. Ga. 2011)(holding that Georgia's anti-SLAPP statute directly conflicts with Rule 8) with *U.S. ex rel Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972 (9th Cir. 1999)(holding that the anti-SLAPP statute "can exist side by side" with Federal Rules 8, 12, and 56); *Gardner v.*

*Martino*, 563 F.3d 981, 991 (9th Cir. 2009)(no direction collision between Oregon's anti-SLAPP statute and the Federal Rules); *Godin v. Schencks*, 629 F.3d 79, 86-87 (1st Cir. 2010)(finding no direct conflict between Maine's anti-SLAPP statute and Rule 12 and Rule 56); *Armington v. Fink*, no. 09-6785, 2010 WL 743524, at *3 (E.D. La. 2010)(finding that Louisiana's anti-SLAPP statute does not conflict with Rule 56).

As noted, several courts, including two federal circuit courts of appeal, have found that anti-SLAPP statutes do not conflict with the Federal Rules.  Anti-SLAPP statutes have most commonly been challenged as "directly colliding" with Federal Rules 8, 12, and 56.  In *U.S. ex rel Newsham v. Lockheed Missiles & Space Co.*, the Ninth Circuit considered whether the California anti-SLAPP statute conflicted with these rules and concluded that they did not.  190 F.3d at 972-73.  It found that the special motion to strike provided by the California anti-SLAPP statute did not displace the availability of Rule 12 motions or motions for summary judgment pursuant to Rule 56.  Even after the denial of a defendant's special motion to strike, it noted that a litigant would still be free to bring a motion to dismiss pursuant to Rule 12 or a motion for summary judgment pursuant to Rule 56.  *Id.* at 972.  While acknowledging that a special motion to strike and Rules 12 and 56 serve similar purposes - namely, allowing defendants to eliminate meritless claims early on in the

litigation – the Ninth Circuit nonetheless concluded that "commonality of purpose . . .does not constitute a 'direct collision.'" *Id.*

Similarly, the First Circuit Court of Appeals also recently considered the issue of whether Maine's anti-SLAPP statute applies in federal court and concluded that it does. *Godin*, 629 F.3d at 88-90. It reasoned that Federal Rules 12 and 56 and Maine's anti-SLAPP statute are designed to answer similar, but recognizably distinct questions. While the Federal Rules are designed to apply generally to all cases, an anti-SLAPP motion is a particularized procedural device applicable to only a narrowly drawn class of claims. Thus, while Rule 12(b)(6) allows a defendant to dismiss a plaintiff's complaint based on its legal deficiencies, an anti-SLAPP motion is designed to provide dismissal on a different basis: that the plaintiff's claims are based on the defendant's exercise of constitutionally guaranteed rights, and that the plaintiff cannot meet the special rules created to protect such activities from being targeted in a lawsuit. *Id.* Similarly, Maine's anti-SLAPP motion does not require consideration of whether disputed factual issues exist, as does Rule 56, but instead requires consideration of the categorically different question of "whether the defendant's conduct had a reasonable basis in fact or law, and whether that conduct caused actual injury." *Id.* at 89 (citing Me. Rev. Stat.

12

14 § 556).  Based on these differences, the First Circuit
concluded that the anti-SLAPP statute is not designed to be a
substitute for the Federal Rules, but instead creates "a
supplemental and substantive rule" designed to offer additional
protection to defendants who are targeted for the exercise of
First Amendment activities.  *Id.* at 88.

## C.  Does Article 971 Apply in Federal Court?

In *Henry v. Lake Charles American Press, LLC*, 566 F.3d 164
(5th Cir. 2009), the Fifth Circuit appears to have assumed that
article 971 applies in federal court, but the issue of whether
the article "directly collides" with the Federal Rules of Civil
Procedure was never raised by the parties and was thus not
addressed by the court. *Id.; see also Armington*, 2010 WL 743524,
at *3 n.2 (noting that the Fifth Circuit did not address whether
article 971 conflicts with the Federal Rules).  Thus, the law on
this issue is not settled.

Both Rule 12 and Rule 56, as well as article 971, are
designed to screen out meritless claims early in the litigation.
However, as the Ninth Circuit recognized in *Lockheed*, a mere
"commonality of purpose" does not constitute a "direct
collision."  190 F.3d at 972.  It is clear that article 971 is
intended to provide an additional layer of protection to
individuals who have been targeted for the exercise of their

constitutionally protected free speech activities, beyond that
which is contemplated by a motion to dismiss pursuant to Rule 12
or a motion for summary judgment under Rule 56.  The Court finds
no evidence that these Rules were intended to apply so broadly
that they "control the issue" of providing the means to eliminate
meritless claims prior to trial.  *All Plaintiffs*, 645 F.3d at
333.  The First Circuit in *Godin* specifically rejected such an
"abstracted framing" of the scope of these Federal Rules.  629
F.3d at 89 n.16.  Additionally, Louisiana also has procedural
rules similar to Federal Rules 12 and 56, in addition to article
971, which lends further credence to the fact that article 971
was not intended to "answer the same question" as these Rules.
*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130
S. Ct. 1431, 1434 (2010).

Furthermore, in providing for a mandatory award of
attorney's fees to the prevailing litigant, the statute has
created substantive rights, which are beyond the purview of the
Federal Rules of Civil Procedure.  In *Chambers v. NASCO, Inc.*,
the Supreme Court held that a state law which provides attorney's
fees is substantive for *Erie* purposes when it "embodies a
substantive policy."  501 U.S. 32, 52 (1991); *see also Gasperini
v. Center for Humanities, Inc.*, 518 U.S. 415, 429 (1996)
(recognizing that a state procedural law's objective was
"manifestly substantive" and holding that the law should be

14

applied in federal court under *Erie*).  The Fifth Circuit has held that a state statute providing attorneys fees to party who prevails on the merits "embodies a substantive policy" and is therefore substantive for purposes of *Erie*.  *See Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 412 (5th Cir. 2006); *Ashland Chemical Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997). Here, while article 971 conditions the availability of attorney's fees and costs to success on the motion, and not to ultimate success on the merits of the case, it is clear that the Louisiana legislature recognized that success on the special motion to strike is fundamentally tied to ultimate success on the merits of the litigation.  If a defendant files a special motion to strike and prevails, the litigation would be terminated in the defendant's favor.  Likewise, a plaintiff prevailing on a special motion to strike will have necessarily shown a probability of success on the merits of his claim.[6]  Accordingly, the Court

---

[6]  Although it is theoretically possible for a plaintiff who prevails on an article 971 motion to subsequently fail to prevail on the ultimate merits of his claims, this is not determinative. Instead, what matters for purposes of classifying this provision as substantive is the "substantive nature of the public policy choices involved in deciding whether vindication of the rights afforded by a particular statute is important enough to warrant the award of fees."  *Chambers*, 501 U.S. at 51.  Clearly, article 971 is emblematic of such legislative policy determinations.  *See* LA. CODE CIV. P. art. 971, Legislative Findings ("The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall

concludes that attorney's fees provisions of article 971 embody a substantive policy and must be applied in federal court under *Erie*.

The primary thrust of LCAC's contention that article 971 cannot apply in federal court is that it places a burden on a plaintiff opposing a special motion to strike which exceeds that which would otherwise apply under either Rule 12 or Rule 56.  The text of the statute, at the least, might lead one to reasonably believe this to be true.  In order to survive a motion for summary judgment, Rule 56 requires the nonmovant to produce evidence "sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."  *Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 308 (5th Cir. 2004).  In order to overcome a special motion to strike, however, a plaintiff must demonstrate "a probability of success on the claim."  *See* LA. CODE CIV. P. art. 971(A)(1).  One of the first reported Louisiana cases applying article 971 specifically noted that the probability of success standard was "legally ambiguous." *See Stern*, 2001-0914, p. 3; 806 So. 2d at 100.  Further, in at

---

be construed broadly.")

least one reported decision, the court stressed that the two standards were not equivalent and held that it was reversible error for the trial court to have converted the special motion to strike to a motion for summary judgment. *See Savoie v. Page*, 2009-0415, p. 6 (La. App. 3 Cir. 2009), 23 So.3d 1013, 1017 ("The issues and burdens imposed under LA. CODE CIV. P. art. 966 (the summary judgment article) and those imposed under LA. CODE CIV. P. art. 971 are entirely different.").

However, the vast majority of decisions appear to suggest that the burden imposed on a plaintiff opposing a special motion to strike is functionally equivalent to the burden imposed on the nonmovant in a motion for summary judgment. In *Estiverne v. Times-Picayune, L.L.C.*, for example, in describing a plaintiff's burden to demonstrate "a probability of success" under article 971, the Louisiana Fourth Circuit Court of Appeal quoted a Louisiana Supreme Court decision setting forth a defamation plaintiff's burden to overcome a motion for summary judgment, implicitly holding that the burdens were the same. 2006-0571, p. 4 (La. App. 4 Cir. 2006), 950 So. 2d 858, 860. Because the plaintiff had failed to carry the summary judgment burden of producing "evidence of sufficient quality and quantity to demonstrate that he will be able to meet his burden of proof at trial," the court held that he had not demonstrated a probability of success on the merits of his claim as required under article

971. *Id.* (quoting *Sasson v. Elder*, 626 So. 2d 345, 350 (La. 1993)); *see also*, *Melius v. Keiffer*, (La. App. 4 Cir. 4/12/08), 980 So. 2d 167, (holding that failure to offer legally sufficient proof on any essential element constituted a failure to establish a probability of success); *Rogers v. Ash Grove Cement Co.*, 34,934, p. 4 (La. App. 2 Cir. 11/2/01), 799 So. 2d 841, 849 (Brown, J., dissenting)("Although labeled a motion to strike, Article 971's intent and purpose is the same as a summary judgement motion."); *Henry*, 566 F.3d at 176 (describing the court's determination of whether a plaintiff has demonstrated a probability of success on the merits as "akin to a court determining only that a plaintiff has presented a threshold showing that allows her claim to proceed").  Furthermore, the Court notes that a federal district court in California, interpreting the nearly identical provisions of the California statute, concluded that it did not impose a burden greater than Rule 56.  *See Rogers v. Hope Shopping Network, Inc.*, 57 F. Supp. 2d 973, 984 n.6 (C.D. Cal. 1999).  Louisiana courts have specifically noted the similarities between article 971 and California's anti-SLAPP and have looked to California case law when there is no precedential Louisiana authority on point. *See Lee v. Pennington*, 2002-0381, at p. 6; 830 So. 2d at 1043 (noting that the two statutes are "very similar in form, language, and legislative intent"); *see also Thomas v. City of*

*Monroe, Louisiana*, 36,526, p. 6 (La. App. 2 Cir. 10/18/02), 833 So. 2d 1282, 1286 (noting that the two statutes are "virtually identical").

While several Massachusetts federal district courts have drawn the opposite conclusion regarding the burdens imposed on a plaintiff opposing an anti-SLAPP motion, *see, e.g.*, *South Middlesex Opportunity Council,* 2008 WL 4595369, at *10-11, the Massachusetts anti-SLAPP statute is substantively different from article 971.  Specifically, it requires a plaintiff to "show by a preponderance of the evidence that the moving party's petitioning activities were devoid of any reasonable factual support or any arguable basis in law," a standard which had been explicitly interpreted by the state's highest court as more stringent than the traditional summary judgment standard.  *See id.* (quoting *Baker v. Parsons*, 434 Mass. 543, 544, 750 N.E.2d 953 (2011)).  In contrast, the Louisiana statute, as explained above, has been interpreted to impose the same burden necessary for a plaintiff to withstand summary judgment.  Accordingly, those decisions are readily distinguishable.

It might also be argued that article 971 allows a court to resolve disputed issues of material fact in favor of the movant, instead of the nonmovant as required under Rule 56.  When evaluating a motion for summary judgment, a court is required to view the facts and draw reasonable inferences in the light most

favorable to the party opposing the motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The text of article 971 does not explicitly require any such favorable inferences to be drawn.[7]  However, after a thorough review of the Louisiana cases interpreting article 971, the Court was unable to find any decisions which suggest that article 971 has been applied in such a manner.  To the contrary, when Louisiana courts have found disputed issues of material fact, they have found that a special motion to strike should not be granted.  *See, e.g.*, *Bradford v. Judson*, 44,092, p.15 (La. App. 2 Cir. 2009), 12 So.3d 974, 984 (reversing trial court's ruling granting summary judgment and special motion to strike).  Accordingly, because the burdens and standards imposed under article 971 as interpreted by Louisiana courts directly correspond with the burdens and standards of Rule 56, the Court concludes that article 971 does not "directly collide" with Rule 56.

LCAC also contends that the burdens imposed by article 971 far exceed those imposed by Rule 12(b)(6).  Although most often

---

[7]  The Court in *Godin* also noted that to the extent that Maine's anti-SLAPP statute could be interpreted to allow a judge to resolve disputed material issues of fact prior to trial, it could violate the Seventh Amendment.  It conclued, however, that the statute was "relatively young" and there was "no reason to think the state courts would construe [it] so as to be incompatible with the Seventh Amendment."  629 F.3d at 90 n.18.  Similarly, here, based on the current Louisiana cases, article 971 has not been interpreted in such a way that Seventh Amendment concerns exist.

used to challenge a lack of evidentiary support, a special motion
to strike can also be utilized to dismiss a complaint based on
legal deficiencies, in the same manner as a motion to dismiss
under Rule 12. *See, e.g.*, *Ruffino v. Tangipahoa Parish Council*,
965 So. 2d 414, 417-18 ("The petition filed by the [plaintiffs]
stated no legal grounds on which [they] might have prevailed, and
a motion to strike under article 971 was proper.").[8]  As an
initial matter, LCAC's references to "burdens" with respect to
the questions of law such a motion would present are somewhat
misguided.  Burdens are implicated by questions of evidence, but
not the questions of law which arise when a special motion to
strike is based on the legal defects of a plaintiff's complaint.
While the standards by which a court decides a question of law
are significant, "the issue of who bears the 'burden of proof'
regarding those standards cannot affect the legal question" that
such a motion would present.  *Rogers*, 57 F. Supp. 2d at 984 n.4.

     While LCAC offers little elaboration on this contention, it
perhaps means to suggest that the requirement of showing a
"probability of success" to overcome this type of motion
necessarily entails more than is required to survive a motion to
dismiss under Rule 12.  Indeed, the Fifth Circuit in *Henry* held
that the burden of demonstrating a probability of success as
required under article 971 "requires more than that which is

---

21

necessary to survive a normal motion to dismiss." *Henry*, 566 F.3d at 181. However, the anti-SLAPP motion in *Henry* was used to challenge the sufficiency of the plaintiff's evidence, and not to allege that the plaintiff's allegations were defective as a matter of law. The burden of demonstrating a probability of success for that type of motion, as discussed above, is identical to that necessary to withstand a motion for summary judgment. That such a burden would require more than that which is necessary to overcome a motion to dismiss is relatively uncontroversial. *See Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991)(noting that "the evidentiary burden on the nonmovant in a summary judgment motion is significantly greater than in a motion to dismiss"). When a special motion to strike successfully identifies legal deficiencies in the plaintiff's complaint, however, it allows the court to conclude that no evidentiary showing substantiating the allegations of the complaint could save the plaintiff's claims. Accordingly, the introduction of any evidence to establish a probability of success would be irrelevant.

The more salient issue is whether the standards for evaluating such a motion under article 971 are inconsistent with the Federal Rules which would govern a motion to dismiss pursuant to Rule 12(b)(6). When confronted with a motion to dismiss, under Rules 8 and 12, a court must construe the plaintiff's

complaint liberally and must accept all well-pleaded factual allegations as true. *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA,* 467 F.3d 466, 467 (5th Cir. 2006). The motion should only be granted if the plaintiff fails to plead sufficient facts to state a claim for relief that is plausible on its face. *Colony Ins. Co. V. Peachtree Const., Ltd.*, 647 F.3d 248 (5th Cir. 2011)(quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). When ruling on a special motion to strike which mounts a legal challenge to a plaintiff's complaint, there is nothing in the text of the article 971 to necessarily require a court to evaluate the motion under standards different from Federal Rules 8 or 12. Further, the California federal district courts have accepted that the substantially similar California anti-SLAPP statute does not require standards inconsistent with these Rules when used in this manner. *See Rogers*, 57 F. Supp. 2d at 984 (noting that the Ninth's Circuit's holding in *Lockheed* "did not endorse a standard for a special motion to strike different from the standard for a Rule 12(b)(6) motion"); *see also Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1150 (S.D. Cal. 2005); *Aeroplate Corp. v. Arch Ins. Co.,* 2006 WL 3257487, *9 (E.D. Cal. 2006). Accordingly, the Court concludes that article 971 does not directly conflict with Rules 8 or 12.

Having found that article 971 does not "directly collide" with the Federal Rules, the Court must turn to the second part of

the Erie inquiry and determine whether failure to apply article
971 would frustrate the dual purposes of the Erie doctrine. *See
Hanna*, 380 U.S. at 468.  It is evident that failing to apply
Louisiana's anti-SLAPP statute would disserve both *Erie* purposes.
Declining to apply article 971 would inequitably deprive
Louisiana defendants targeted by meritless SLAPP lawsuits of an
important procedural weapon to which they would otherwise be
entitled to use in state court. *See Armington*, 2010 WL 743524,
at *3 n.2 ("Louisiana has important interests in the application
of its anti-SLAPP law, and its application will ensure that
defendants, whether in diversity or not, will be protected from
meritless defamation claims and the resulting fishing expeditions
that might chill the exercise of their speech rights.").
Furthermore, as the Ninth Circuit recognized, the threat of forum
shopping would be eliminated by applying the statute in federal
court. *See Lockheed Missiles & Space Co., Inc.*, 190 F.3d at 973.
Otherwise, a plaintiff determined to bring a meritless SLAPP suit
would inevitably make the calculated choice to proceed in a
federal forum without fear of the sting of having to pay the
defendant's attorney's fees.  Accordingly, the Court concludes
that article 971 of the Louisiana Code of Civil Procedure is
applicable in federal court.

**D.  The Merits of the Instant Article 971 Motion:**

Having concluded that article 971 applies in federal court,

the Court now turns to the merits of the instant motion.  First, Defendant Marzano-Lesnevich must prove that the instant lawsuit arises from act in furtherance of the exercise of her right of petition or free speech under the Louisiana or United States Constitution in connection with a public issue.  LA. CODE CIV. P. art. 971(A).  LCAC contends that the Defendant cannot meet her prima facie burden that the publication of her essays was an act in furtherance of her First Amendment rights because no person has a First Amendment right to disclose confidential information in breach of a confidentiality agreement.  This contention, however, begs the question of whether the Defendant's publications were protected speech under the First Amendment in the first place.  Although the statutory text is silent on this issue, the Court concludes that article 971 should not be interpreted to require a defendant to establish as a matter of law that her speech was actually protected by the First Amendment as a part of this prima facie burden.

Under LCAC's proposed construction of the statute, the second inquiry under article 971 – whether a plaintiff has demonstrated a probability of success on the merits – would essentially become superfluous:  if a defendant were required to show that the First Amendment actually protects her speech, a plaintiff cannot, by definition, demonstrate a probability of success on the merits.  Furthermore, the Court notes that the

25

California Supreme Court has rejected precisely the same argument
with respect to the application of the burden-shifting framework
of the California anti-SLAPP statute.  *See Navellier v. Sletten*,
52 P.3d 703, 712-713 (Cal. 2002)("The Legislature did not intend
that in order to invoke the special motion to strike the
defendant must first establish her actions are constitutionally
protected under the First Amendment as a matter of
law.")(internal citations omitted); *see also Fox Searchlight
Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 305 (Cal. App.
2 Dist. 2001)("Fox argues its suit does not fall within the SLAPP
statute because Paladino has no First Amendment right to disclose
privileged and confidential documents or to refuse to return
those documents to Fox, their rightful owner. The same argument
could be made by the plaintiff in a defamation suit—the defendant
has no First Amendment right to engage in libel or slander.  Yet,
defamation suits are a prime target of SLAPP motions.").  Here,
the Court agrees with the analysis of the California Supreme
Court in *Flately v. Mauro* that "any claimed illegitimacy of the
defendant's acts is an issue which the plaintiff must raise and
support in the context of the discharge of the plaintiff's
burden" to show a probability of success on the merits. 139 P.3d
2, 15 (Cal. 2006)(internal citations omitted).

     Thus, all that is required in order for a defendant to
satisfy her initial burden under article 971 is to show that the

26

acts which form the underlying basis by the lawsuit fall within the purview of article 971(F)(1).  Included among the enumerated activities which constitute an "act in furtherance of a person's right . . . of free speech" under article 971(F)(1) is "[a]ny written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."  LA. CODE CIV. P. art. 971(F)(1)(c).  The face of the plaintiff's complaint clearly reveals that gravamen of its claims arise from the Defendant's two essays published online and in a literary journal, and its claim for injunctive relief seeks to prohibit her from publishing further works or otherwise disclosing information which could be prejudicial to LCAC clients.[9]  It is clear that the publication of a work of literature is among the purest exercises of the right to free speech guaranteed under the First Amendment.  Additionally, these essays were published both in literary journals and on the

---

[9]  In particular, LCAC alleges that: "Marzano-Lesnevich published an essay entitled "In the Fade" in the Spring 2010 volume of the *Bellingham Review,* which divulges confidential and privileged information learned while Marzano-Lesnevich was employed by LCAC . . ."; Rec. Doc. 1-1, p. 4, ¶ 9; "Marzano-Lesnevich reposted her essay "In the Fade" on a personal website and that she was also posting and/or promoting other essays and writings in which Marzano-Lesnevich discloses confidential and privileged information and other information from her representation of LCAC's clients which is prejudicial and harmful to LCAC's clients.  Marzano-Lesnevich's website also suggests that Marzano-Lesnevich is currently working on a full length book about her work with LCAC."  Rec. Doc. 1-1, p. 5, ¶ 11.

Defendant's personal website, which constitute "places open to the public" within the meaning of article 971(F)(1)(c).

Furthermore, courts applying article 971 have concluded that a wide variety of activities involving the publication of written works or dissemination of news stories constitute acts in furtherance of the right of free speech, even when the content of those publications are alleged to be unprotected by the First Amendment. *See, e.g.*, Henry, 566 F.3d at 181 (publication of a series of allegedly defamatory newspaper articles ); *Armington*, 2010 WL 743524 at *5 (publication of allegedly defamatory article recounting events at Memorial Medical Center in the wake of Hurricane Katrina); *Alexanian v. Brown*, No. 07-00806, 2009 WL 2356443, at *6 (W.D. La. July 29, 2009)(publication of purportedly defamatory newspaper article regarding practices and procedures of animal control facility); *Starr v. Boudreaux*, 2007-0652, p. 4 (La. App. 1 Cir. 2007),  978 So. 2d 384, 389 (publication of newspaper article regarding sudden removal of radio station from the airwaves); *Estiverne*, 2006-0571, at p. 4; 950 So. 2d at 860 (publication of allegedly defamatory article describing prosecution of ex-lawyer's theft of elderly client's funds); *Thomas*, 36,526, at p. 7; 833 So. 2d at 1286-87 (broadcasting allegedly slanderous news report detailing alleged sexual criminal conduct of a city official); *Lee*, 830 So. 2d at 1044 (publication of defamatory articles and airing of newscasts

28

regarding police officer's rape charges).

It is also evident that the subject of the Defendant's articles clearly implicate matters of public concern. The Supreme Court has held that speech involves a matter of public concern when it can be fairly said to relate to "any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). Defendant's published essays explore issues surrounding the death penalty, sexual abuse, sex offender laws, and the operation of the criminal justice system in general. Clearly, all of these constitute matters of public concern. *See, e.g.*, *Garrett v. Estelle*, 556 F.2d 1274, 1279 (noting that "the death penalty is a matter of wide public interest"). While the essays also may contain speech unprotected by the First Amendment because it breaches a fiduciary duty or a contractual duty, that inquiry is properly allocated to the second part of the burden-shifting framework. Accordingly, the Defendant has met her prima facie burden of demonstrating that the acts giving rise to the Plaintiff's lawsuit against her constitute acts in furtherance of her right to free speech.

**E.  Has LCAC Shown a Probability of Success on the Merits?**

Because the Defendant has met her prima facie burden, the Court must grant the Defendant's special motion to strike unless LCAC has demonstrated a probability of success on the merits of its claims. LA. CODE CIV. P. art. 971(A). Here, Defendant's

29

special motion is directed exclusively at LCAC's claim for injunctive relief.  LCAC specifically seeks preliminary and permanent injunctive relief prohibiting the Defendant from "present and future disclosure, publication, or dissemination of: (i) attorney-client communications, work product, and other confidential and privileged information, which she obtained while working as a law clerk for LCAC; and (ii) information relating to her representation of LCAC's clients which disadvantages or otherwise prejudices LCAC's clients."[10]  Defendant Marzano-Lesnevich argues that LCAC cannot establish a probability of success because the prayed-for injunction would constitute a prior restraint, in violation of the First Amendment.

As an initial matter, Defendant appears to have assumed that article 971 and the special motion to strike may be used to selectively eliminate discrete claims or theories of relief, as opposed to dispensing with the entire lawsuit.  The Court is unaware of any reported Louisiana case addressing the issue, but in the Court's view, the special motion to strike was not intended to be utilized in this manner.

As previously explained, the Louisiana Legislature enacted article 971 to address the rising number of lawsuits brought to harass and intimidate those individuals who have exercised their

---

[10]   Rec. Doc. 1-1, p. 7.

constitutionally protected rights of free speech or petition for redress of grievances.  *See* LA. CODE CIV. P. art. 971, Legislative Findings.  It is evident that the types of lawsuits that the anti-SLAPP motions was intended to eliminate are those which are completely devoid of merit and which "abuse . . . the judicial process."  *See id.; Armington*, 2010 WL 743524 at *3 (noting that the article 971 "is intended to weed out only clearly meritless claims"); *Stern*, 806 So. 2d at 100 (explaining that the purpose of article 971 is to eliminate "frivolous and meritless claims").  It was not, in the Court's view, intended to be used against lawsuits which are partially valid and seek to vindicate legally cognizable rights, but which also contain a claim or theory which is somehow legally deficient or otherwise barred by the First Amendment.  To accept the Defendant's proposed use of the special motion to strike would mean that a plaintiff who pleads and substantiates any number of legally cognizable claims, but who also pleads a claim as to which the Defendant has a valid First Amendment defense, would be forced to pay the Defendant's attorney's fees and costs.  There is no evidence that the Louisiana Legislature intended article 971 to be applied in this manner.  *See Delta Chem. Corp., v. Lynch, et al*, 2007-0431, p.14 (La. App. 4 Cir. 2/27/08); 979 So. 2d 579, 588 (explaining that the provisions of article 971 awarding attorney's fees and costs are penal in nature and must be strictly construed).

31

Notably, the California Supreme Court has interpreted the identical provisions of the California anti-SLAPP statute in a similar fashion. *See Oasis West Realty, LLC v. Goldman,* 250 P.3d 1115, 1120 (Cal. 2011)("If the plaintiff can show a probability of prevailing on *any part* of its claim, the cause of action is not meritless and will not be stricken; once a plaintiff shows a probability of prevailing on *any part* of its claim, the plaintiff has established that its cause of action has some merit and the entire cause of action stands.")(emphasis added)(internal citations omitted); *Mann v. Quality Old Time Service, Inc.*, 15 Cal. Rptr. 3d 215, 223 (Cal. Ct. App. 2004)("Stated differently, the anti-SLAPP procedure may not be used like a [normal] motion to strike, . . . eliminating those parts of a cause of action that a plaintiff cannot substantiate.").

A defendant has other procedural tools to eliminate meritless theories, as opposed to meritless lawsuits, such as a normal motion to strike pursuant to Rule 12(f) or a motion for summary judgment under Rule 56. Thus, for purposes of satisfying the secondary burden of demonstrating a probability of success on the merits, if a plaintiff can demonstrate a probability of success as to any part of its claim, then the cause of action has at least some merit, and the special motion to strike must be denied. Accordingly, with respect to the present motion, even if the Plaintiff's request for preliminary injunctive relief would

32

be barred by the prior restraint doctrine as the Defendant suggests, the Court must determine only whether LCAC has demonstrated a probability of success on either of its claims for breach of contract or breach of fiduciary duty.

**F.   LCAC's Breach of Contract Claim:**

The Plaintiff argues that it has stated and substantiated a claim for breach of contract under Louisiana law.  The First Amendment does not bar enforcement of a contract restricting speech or the right to publish certain information between private parties.  The United States Supreme Court, along with several others, has concluded that First Amendment rights are not absolute, and may be limited by contract.  *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 670–71, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991)(holding that the First Amendment did not bar enforcement of restrictions on speech or publication which are "self-imposed"); *Krystkowiak v. W.O. Brisben Companies*, Inc., 90 P.3d 859, 865 (Colo. 2004); *Perricone v. Perricone*, 972 A.2d 666, 680 (Conn. 2009)(holding that a confidentiality agreement constitutes a valid waiver of First Amendment rights, even in the absence of any express reference to the First Amendment).

In order to establish a claim for breach of contract under Louisiana law, a plaintiff must prove (1) an undertaking of an obligation to perform, (2) a breach of that agreement by the obligor, and (3) damages suffered by the obligee.  *Favrot v.*

33

*Favrot*, 2010-CA-0986, p. 14-15, (La. App. 4 Cir. 2/9/11), 68 So.
2d 1099, 1109-10 (citing *Jackson Joint Venture v. World Constr.
Co., Inc*., 499 So.2d 426, 427 (La. App. 4th Cir.1986)).  Unless
the law prescribes a writing, a contract may formed orally
through offer and acceptance of the parties.  LA. CIV. CODE art.
1927.  LCAC alleges that the Defendant orally agreed to abide by
the Louisiana Rules of Professional Responsibility, and in
particular, the rules regarding the rules regarding the
preservation of confidential information regarding LCAC clients.

     In order to establish the existence of an oral contract
alleged to have a value exceeding $500, as is alleged here, the
existence of the contract must be proved by at least one witness
and "other corroborating circumstances."  LA. CIV. CODE art. 1846.
To demonstrate the existence of the Defendant's oral contract,
the Plaintiff has submitted the declaration of Richard Bourke,
LCAC's director, describing LCAC's "long-standing policy" of
affirmatively requesting its summer law clerks to abide by the
ethical rules governing lawyers in Louisiana.  The Plaintiff also
submits the declaration of Melanie Carr, who oversaw the training
program for LCAC's summer law clerks during the Defendant's
clerkship.  She avers that she specifically informed the
Defendant that her employment was conditioned upon her
understanding and agreeing that (1) information learned during
the course of employment is presumed to be confidential; (2)

34

confidential information may only be shared with other LCAC employees working on a particular case; and (3) clients possess the sole right to waive confidentiality and that this waiver must be in writing.  She further avers that the Defendant stated that she understood these conditions and specifically agreed to them. Louisiana courts have held that a party to a lawsuit may serve as his own credible witness for the purpose of satisfying the requirements of article 1846.  *See Gutierrez v. Moezzi*, 2006-CA-1395, p. 9 (La. App. 4 Cir. 4/11/07), 957 So. 2d 842, 847-48.  Accordingly, LCAC has satisfied the first requirement of Civil Code article 1846.

With regards to the second requirement of article 1846, the existence of "other corroborating circumstances," the Court finds that the circumstances surrounding Defendant's summer clerkship are sufficiently corroborative of the existence of the oral agreement.  The declaration of Richard Bourke states that he has reviewed research memoranda written by the Defendant during her internship, and that they had been labeled "Confidential" and "Subject to the Attorney-Client Privilege," which may demonstrate that the Defendant understood herself to be bound by a duty of confidentiality.  Furthermore, the Louisiana Rules of Professional Conduct impose an ethical duty on LCAC's supervising attorneys to "make reasonable efforts" to ensure that the conduct of their non-lawyer employees is compatible with the ethical

35

obligations imposed on lawyers. *See* La. Rules of Prof. Conduct R. 5.3(c).  While the Defendant points out that the "reasonable efforts" standard of Rule 5.3 did not necessarily require LCAC to obtain a confidentiality agreement from its law clerks, it is clear that Rule 5.3 provides, at the very least, strong incentive for obtaining such an agreement.  Indeed, a lawyer who fails to comply with Rule 5.3 can be subject to disciplinary action for the non-lawyer's disclosure of a client's confidential information. *See In re Wahlder*, 728 So.2d 837, 840 (La. 1999)(noting that a licensed attorney ultimately has responsibility for the actions of his staff under Rule 5.3).  As a result, the Court finds that the circumstances surrounding the Defendant's clerkship, along with the declarations produced are sufficient to demonstrate the existence of "other corroborating circumstances" as required by Civil Code article 1846.

The Defendant also argues that, even if she were bound by a confidentiality agreement, LCAC has failed to show that the Defendant ever breached that agreement by disclosing confidential information.  LCAC has identified seven passages from the Defendant's two essays which are alleged to contain confidential and privileged information pertaining to its clients.  After reviewing the disputed passages, some of the information contained therein is information available in public records. For instance, one passage from the essay *Longtermer's Day*, for

example, describes the facts of the crime involving a young man, identified only by the pseudonym "Corey," who was facing a capital murder charge.  Much of the passage LCAC identifies merely recites the information available in the LCAC client's arrest warrant and subsequent confession to police in a more stylized narrative form.[11]  Similarly, the essay *In the Fade* contains some information pertaining to former-LCAC client Ricky Langley which is easily garnered from the public record.  The mere fact that Langley is a convicted child molester, for instance, is well-established in the court records detailing Langley's three prosecutions and convictions for murdering a seven-year old boy in Calcasieu Parish.[12]

In other contexts, courts have held that a party under a duty of confidentiality does not breach that duty by disclosing

---

[11]  *See* Rec. Doc. 18-1, Exh. 9.

[12]  After a previous conviction for child molestation, Ricky Langley was convicted of first-degree murder in 1994, and the case was remanded on appeal.  *See State v. Langley*, 95-1489 (La. 4/14/98), 711 So. 2d 651.  The trial court subsequently granted Langley's motion to quash his indictment, and that judgment was affirmed on appeal by the Louisiana Supreme Court.  *State v. Langley*, 1995-1489 (La. 4/3/02), 813 So. 2d 356.  After Langley was re-tried and convicted for first-degree murder, the Louisiana Supreme Court overturned the verdict based on structural defects in the trial court's actions.  *State v. Langley*, 2004-269 (La. App. 3 Cir. 12/29/04), 896 So. 2d 200.  After he was re-indicted, the Louisiana Supreme Court held that he could not be re-tried for first-degree murder.  *State v. Langley*, 2006-1041 (La. 5/2207), 958 So. 2d 1160.  Langley was re-tried for second-degree murder and convicted, and his conviction was affirmed on appeal. *State v. Langley*, 2010-969 (La. App. 3 Cir. 4/6/11).

37

information available in the public record.  *See, e.g.*, *Williams v. Coffee County Bank*, 308 S.E.2d 430, 432 (Ga. Ct. App. 1983)("It would be anomalous indeed to permit appellant to recover for appellees' breach of an implied duty of confidentiality when the only information disclosed was a matter of public record and indisputedly was not confidential."); *Schaefer v. General Elec. Co.*, No. 3:07-CV-0858, 2008 WL 649189, at *13 (D. Conn. Jan. 22, 2008)(holding that information available from public records is not confidential).  With respect to the duty of confidentiality imposed on lawyers, however, many courts have concluded that an attorney breaches his ethical duties by disclosing even information which is a matter of public record.  *See, e.g.*, *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979)("As we have noted before, the "use of the word 'information' ... is particularly revealing of the drafters' intent to protect all knowledge acquired from a client.... This is true without regard to whether someone else may be privy to it."); *Akron Bar Ass'n v. Holder*, 810 N.E.2d 426, 435 (Ohio 2004) (explaining that "an attorney is not free to disclose embarrassing or harmful features of a client's life just because they are documented in public records"); *In re Anonymous*, 654 N.E.2d 1128, 1129-30 (Ind. 1995) (holding that a lawyer violated the duty of confidentiality, even though that information "was readily available from public sources and not

confidential in nature"); *Lawyer Disciplinary Bd. v. McGraw*, 461 S.E.2d 850, 851 (W. Va. 1995) ("The ethical duty of confidentiality is not nullified by the fact that the information is part of a public record or by the fact that someone else is privy to it.").

For the purposes of resolving the instant special motion to strike, however, it is unnecessary to determine whether the disclosure of publicly availably information would constitute a breach of a contractual duty of confidentiality under these circumstances, because LCAC has identified several passages which contain information which is not a matter of public record.  One passage in *Longtermer's Day*, for example, discloses the fact that the client's "mental and emotional state deteriorated rapidly in jail," and that the supervising attorney had stopped allowing women to visit him.  This information, as the Defendant acknowledges, is not drawn from the public record.  While the Defendant points out that the client is only identified by the pseudonym "Corey," considered alongside the other information revealed in the essay, his identity could easily be ascertained.  Similarly, another portion of the essay *In the Fade* reveals the details of a conversation between an LCAC attorney and the Defendant wherein the attorney discloses that LCAC client Ricky Langley was threatening to kill himself, and asks her if she would visit him in prison to "sit with him for a while" and "tell

him that he's not a bad man."[13]  This information, as LCAC points

out, was not unknown outside of LCAC personnel.  While the

Defendant points out that the LCAC attorney representing Langley

disclosed the fact that he had previously attempted suicide at

the opening statements of his trial in 2002, this does not reveal

the fact that he communicated such a threat to his attorneys

during the Defendant's clerkship in 2003.[14]  Both LCAC and the

clients it defends have a legitimate interest in maintaining the

confidentiality of sensitive information regarding the state of a

client's mental health, as well as how LCAC's supervising

attorneys respond to such issues within [15]

Finally, LCAC has produced evidence that it has been harmed

by the disclosure of this information.  The harm that results

from the disclosure of a client's confidential information,

whether by an attorney or by those on whom he relies, is the

same.  The preservation of a client's confidential information,

as has been explained in a vast number of judicial opinions,

fortifies the client's trust in his attorney.  *See In re American

Airlines, Inc.*, 972 F.2d 605, 618-20 (5th Cir. 1992)("The trust a

---

[13]  *See* Rec. Doc. 15-5, Exh. A-1, p.7

[14]  *See* Rec. Doc. 18-3, Exh. 12.

[15]  Because the Court concludes that the Plaintiff has shown
that at least some of the information contained in the essays was
confidential in nature, it is unnecessary to address the
remaining passages also alleged to contain confidential
information.

40

lawyer's duty of loyalty inspires in clients encourages them freely to confide in the lawyer and freely to rely on the advice provided by the lawyer.").  This relationship is all the more critical in the high-stakes capital cases handled by LCAC, where the client's life, quite literally, is at stake.  As the director of LCAC has explained, death penalty cases often impose severe emotional strains on their clients, and the development of a mitigation defense requires unearthing a client's most painful emotional memories and experiences.  The disclosure of sensitive information regarding a client's mental health or other information disclosed by a client in confidence may result in reluctance on the part of future LCAC clients to share such information with their attorneys, thereby compromising LCAC's ability to provide those clients with effective representation.  While this injury is somewhat less concrete than the typical injury alleged in a breach of contract claim, it is certainly no less real.

**G. Conclusion**

In conclusion, the Court finds that LCAC has made a showing sufficient to support a jury verdict with respect to all the essential elements of its breach of contract claim.  As a result, it is unnecessary to address the merits of LCAC's breach of fiduciary duty claim, or the other ancillary arguments raised by the parties.  Accordingly,

**IT IS ORDERED** that Defendant Marzano-Leznevich's Special Motion to Strike **(Rec. Doc. 4)** is **DENIED.**  Plaintiff LCAC, as the prevailing party, is entitled to reasonable attorney fees and costs.  *See* LA. CODE CIV. PROC. art. 971(B).  However, a prevailing party may only recover attorney's fees associated with the motion to strike.  *See Delta Chem. Corp.,* 2007-0431 at p.14; 979 So.2d at 588.  As a result,

**IT IS FURTHER ORDERED** that LCAC shall submit a motion for attorney's fees and costs associated with opposing the Defendant's special motion to strike within fifteen (15) days. The Defendant shall file any response to the Plaintiff's motion within seven (7) days thereafter.

New Orleans, Louisiana, this 23rd day of November, 2011.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE